33
ex 1+2

007679

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In Re:  Subpoena to Braylon J. Edwards ) | Case:2:09-mc-50356 |
| ) | Judge: Rosen, Gerald E |
| ) | MJ: Whalen, R. Steven |
| ) | Filed: 03-26-2009 At 10:38 AM |
| HANSEN BEVERAGE COMPANY, ) | MQ HANSEN BEVERAGE CO V. INNOVATION |
| ) | VENTURES (DA) |
| Plaintiff, ) | |
| v. ) | Underlying Case: |
| ) | Civil Action No.: 08 CV 1166 |
| INNOVATION VENTURES, LLC ) | United States District Court for the |
| d/b/a LIVING ESSENTIALS, ) | Southern District of California |
| ) | The Honorable Irma Gonzales |
| Defendant. ) | |
| ) | |

## MOTION OF NON-PARTY BRAYLON J. EDWARDS TO
## QUASH SUBPOENA PURSUANT TO FED.R.CIV. P. 45(c)

Pursuant to Rule 45(c), Federal Rules of Civil Procedure, Non-party, Braylon J. Edwards, moves to quash the subpoena dated March 2, 2009 served by Hansen Beverage Company, the plaintiff in the underlying case. The underlying case is a Lanham Act case captioned *Hansen Beverage Co. v. Innovation Ventures, LLC*, Case No. 08 CV 1166 pending in the Southern District of California. The subpoena at issue in this motion was issued from this Court.

Pursuant to Local Rule 7.1(a)(2)A), counsel for Mr. Edwards conferred with counsel for Hansen to explain the nature of this motion and its legal basis. Hansen refused to withdraw the subpoena.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By:

Thomas W. Cunningham     (P57899)
Mark A. Cantor               (P32661)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan  48075-1238
Tel:      (248) 358-4400
Fax:      (248) 358-3351
Email:   mcantor@brookskushman.com
          tcunningham@brookskushman.com

Dated: March 26, 2009

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In Re:  Subpoena to Braylon J. Edwards | ) | Miscellaneous Action No.: _____ |
| | ) | |
| | ) | |
| HANSEN BEVERAGE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Underlying Case: |
| v. | ) | Civil Action No.: 08 CV 1166 |
| | ) | United States District Court for the |
| INNOVATION VENTURES, LLC | ) | Southern District of California |
| d/b/a LIVING ESSENTIALS, | ) | The Honorable Irma Gonzales |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BRIEF IN SUPPORT OF MOTION OF NON-PARTY BRAYLON J. EDWARDS
TO QUASH SUBPOENA PURSUANT TO FED.R.CIV. P. 45(c)**

# I.   **INTRODUCTION**

Hansen Beverage Company ("Hansen") issued a subpoena to Braylon J. Edwards, on March 2, 2009 to appear for a videotaped deposition and to produce documents on March 31, 2009.  (*See* **Exhibit 1**).  Mr. Edwards, a well-known NFL football player for the Cleveland Browns, appears in a commercial for Innovation Ventures, LLC ("Living Essentials"), the defendant in the underlying action.  Mr. Edwards is not a party to the underlying action, nor does he have any information that will bear on the issues to be decided in that case.  Hansen also issued subpoenas to Osi Umenyiora, another well-known NFL football player and Steve Wallace, a well-known NASCAR driver; each, like Mr. Edwards, provided celebrity endorsements for Living Essentials' 5 HOUR ENERGY® product.  The only purpose served by issuing subpoenas to these well-known celebrities is to annoy, embarrass, burden, and harass them.

Hansen's central claim in the underlying action is that certain Living Essentials' advertising claims are false and/or disparage Hansen's products.  In short, Hansen asserts that Living Essentials' 5 HOUR ENERGY® product cannot provide energy because energy can only come from calories, of which 5 HOUR ENERGY® only has a few.  Mr. Edwards has no knowledge of the science behind Living Essentials' 5-Hour Energy® products and can contribute nothing to the advertising statements of which Hansen complains.  Mr. Edwards' only possible connection to the claims in the underlying litigation is his "celebrity endorsement" in a television commercial. Significantly, the commercial featuring Mr. Edwards is not included among the numerous "offending" ads Hansen identifies in its Complaint.

Regardless, whether or not the statements Hansen complains of violate any of Hansen's rights will be determined through experts and scientific studies, not Mr. Edwards' relationship with Living Essentials.  Indeed, each party in the underlying action has designated experts in the

relevant scientific fields to evaluate and opine on the veracity of the complained of advertising claims.

Relevant or not, all of the information that Hansen seeks from Mr. Edwards by way of its subpoena can be obtained directly from Living Essentials, thereby avoiding interference with Mr. Edwards' pre-existing, professional obligation to the Cleveland Browns to participate in the team-mandated off-season workout camp in Cleveland, where he is now. Balancing the interests of Mr. Edwards as against Hansen's in this matter clearly favors quashing the subpoena under Fed. R. Civ. P. 45(c).

In view of the foregoing, as more fully set forth below, the only purpose served by issuing the subject subpoena to Mr. Edwards is to annoy, embarrass, burden, and harass. Perhaps Hansen believes that by doing so it can indirectly intimidate and place pressure on Living Essentials. This Court should not countenance such litigation tactics.

Accordingly, Mr. Edwards moves to quash this subpoena because it subjects him to undue burden, expense, annoyance, and embarrassment. Under Fed. R. Civ. P. 45(c)(1) and (3), the Court should quash this subpoena.

## II.   **BACKGROUND FACTS**

### A.   **The Underlying Litigation**

The underlying litigation involves Hansen's claims for false advertising and trade libel against Living Essentials, pending in the Southern District of California (the "Litigation").

Hansen markets, among other things, a line of energy drinks under the name Monster Energy®. Living Essentials markets a liquid dietary supplement called 5-HOUR ENERGY®. Hansen asserts that Living Essentials is liable for false advertising and trade libel as a result of the advertising appearing on Living Essentials' products and in the media. Hansen alleges that Living Essentials' advertising is false because the 5 HOUR ENERGY® product cannot provide energy. Hansen asserts that energy can only come from calories, of which 5 HOUR ENERGY® only has a few. Hansen seeks damages for lost sales and an injunction.

Living Essentials denies that its advertising is false or misleading or that it has committed trade libel.

Early on in the case, Hansen moved for a preliminary injunction against Living Essentials based on Hansen's allegations made in its Complaint, which was fully briefed by the parties and oral argument was heard. The injunction was *denied*, the Court finding that "plaintiff has not demonstrated a likelihood of success on the merits." (*See* Order Denying Plaintiff's Motion for Preliminary Injunction, at page 6, issued by the Court in the Litigation, a true and correct copy of which is attached hereto as **Exhibit 2**.)

It is worthy to note that the above-referenced Order identified the central issues in this case, namely, whether, from a scientific standpoint, Living Essentials' product name "5-HOUR ENERGY®" and advertisements ("Hours of Energy Now" and "No Crash Later") are literally false. These issues were (and will be at trial) the subjects of much expert testimony based on scientific definitions, laboratory analysis, and clinical studies (as opposed to anecdotal testimonials).

It is also worth noting that, if it were to proceed, Mr. Edwards' deposition would be only the *second* deposition to be taken in this case and is one of three subpoenas directed to celebrity endorsers of Living Essentials' 5-Hour Energy® product.

**B.    Mr. Edwards' Celebrity Endorsement Ad**

Mr. Edwards provides a "celebrity endorsement" for Living Essentials' 5-Hour Energy® product. In a televised commercial[1], Mr. Edwards states as follows:

> The first time I took 5-Hour Energy, I didn't feel bad afterwards. You usually take an energy drink and along the next 3 hours later, at some point, you just hit the wall. And I never hit that wall. It's a natural energy that stuck with me for a while — 5 hours or so. One of my friends on the team, a guy that I'm with a lot — he uses it and he likes it and he calls and makes sure I have two when I come in the morning because he always needs one. I say well go buy your own, but I'm kinda like the 5-Hour designated driver. 5-Hour Energy — I use it; I love it.

**C.    Mr. Edwards' Short Biography**

Braylon Jamel Edwards was born in Detroit, Michigan. Mr. Edwards had an outstanding college football career at the University of Michigan where he set many receiving records, such as single season receptions (97) and yards (1330), and career receptions (252), yards (3,541), and touchdowns (39). During his senior season, Mr. Edwards won the Fred Biletkinoff award, given to the most outstanding wide receiver in college football. He was also the Big Ten MVP and a consensus All-American. Mr. Edwards was drafted by the Cleveland Browns with the third overall selection in the 2005 NFL Draft. In 2007, Mr. Edwards had 1289 receiving yards and 16 touchdowns, earning an invitation to the Pro Bowl. Due to his celebrity, Mr. Edwards has landed endorsement deals, appeared in commercials, and made numerous television appearances off the field.

---

[1] The commercial can be viewed at http://www.youtube.com/watch?v=N_hPMFHVe8Q).

4

**D.**     **The Subject Subpoena**

The subject subpoena seeks both Mr. Edwards' testimony and the production of documents. (*See* **Exhibit 1** hereto.) The documents demanded are extremely broad in requesting "all documents" and "all communications" exchanged between Mr. Edwards and Living Essentials. Even putting aside the fact that the subpoena contains overly broad document categories, it seeks documents that could be obtained directly from Living Essentials.

### III.    THIS COURT SHOULD QUASH THE SUBPOENA *IN TOTO*

Hansen's subpoena must be quashed as a matter of law because it subjects Mr. Edwards to "undue burden." The discovery sought from him is not limited in any manner and is neither relevant not necessary to the underlying action.

Rule 45 provides that a court shall quash (or modify) a subpoena if it "subjects a person to undue burden." F.R.C.P. 45(c)(3)(A)(iv). Whether a subpoena subjects a witness to undue burden generally raises a question of the subpoena's reasonableness, which "requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (2d ed.1995). "[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source." *Id.* Where the witness has no personal testimony relevant to the case and the information sought is readily obtainable from other sources, the court may justifiably quash the subpoena. *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004).

Balancing the interests of Mr. Edwards as against Hansen's in this matter clearly favors quashing the subpoena under Fed. R. Civ. P. 45(c).

### A.    Having to Appear for Deposition and/or Produce Documents in Response to the Subpoena Places an Undue Burden on Mr. Edwards.

Due to his rigorous schedule, having to set aside a day to submit to deposition and additional time to gather and produce documents would place an undue burden on Mr. Edwards — especially whereas here the testimony and documents sought are unnecessary and can be obtained from other less burdensome sources. As set forth above, Mr. Edwards is a professional football player who is presently attending team-mandated off-season workout camp

in Cleveland, Ohio. Mr. Edwards should not be made to abrogate his obligations to his team by having to comply with the subject subpoena, which seeks information that is tangential — at best — to the issues in this case.

Mr. Edwards suspects that Hansen propounded the subpoena in an effort to harass Living Essentials indirectly by harassing and embarrassing him. Naturally, this is not a legitimate purpose. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-791 (3rd Cir. 1994). As a celebrity, if word gets out that he has been deposed, it could hurt his reputation and make other potential brand-owners reluctant to engage him as a spokesperson.

Hansen does not know yet whether it first could obtain from Living Essentials the information it now seeks from Mr. Edwards – because it has not yet tried. As stated above, were Mr. Edwards' deposition to proceed, his would be the *second* deposition in the case. Critically, however, Mr. Edwards has been informed that Hansen only recently served discovery requests on Living Essentials – responses are not due until after the scheduled depositions. If Hansen's motives were pure, one would expect that Hansen would want to take discovery from Living Essentials *before* troubling third-parties for information that would, in all likelihood, prove unnecessary.

Summoning Mr. Edwards to appear for deposition and to produce documents only serves to place a burden on him, annoy him, and force him to retain an attorney to represent him at the deposition, which would involve a significant expense.[2]

**B.    Mr. Edwards Has No Information Relevant To Hansen's Claims Asserted In The Litigation.**

Any potential testimony by Mr. Edwards does not bear on any of the asserted claims in this case. At the outset, it should be noted that Mr. Edwards is not named in either party's initial

---

[2] Giving Hansen the benefit of the doubt, perhaps the subpoena directed to Mr. Edwards is motivated by its attorneys' desire to meet him. While less sinister, this motive too is illegitimate.

disclosures or discovery responses. Significantly, although the Complaint identifies numerous advertisements of which Hansen complains, Mr. Edwards' statements made in his celebrity endorsement advertisement do not appear among them. Had the advertisement in which Mr. Edwards appears been at issue in this litigation, one would expect Hansen to have specifically identified it in its Complaint.

As can be gleaned from the above-referenced Order Denying Plaintiff's Motion for Preliminary Injunction (**Exhibit 2** hereto), the main issues in this case are whether, from a scientific standpoint, Living Essentials' mark "5-HOUR ENERGY®" and advertisements ("Hours of Energy Now" and "No Crash Later") are literally false.[3] These issues were (and will be at trial) the subjects of much expert testimony based on scientific definitions, laboratory analysis, and clinical studies (as opposed to anecdotal testimonials).

Mr. Edwards has no personal knowledge of the matters relevant to this action; his anecdotal statements made in the above-detailed celebrity endorsement do not go to the truth or falsity of the statements complained of by Hansen, which do not include among them Mr. Edwards' statements. The only statement made in his television commercial regarding the performance of Living Essentials' product is personal opinion, specifically, "The first time I took 5-Hour Energy®, I didn't feel bad afterward. You usually take an energy drink and along about 3 hours later, at some point, you just hit the wall. And I never hit that wall. The energy stuck with

---

[3] The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Id.*

me for a while — 5 hours or so." What Mr. Edwards likes or feels cannot be open to debate. Hansen will have to resort to experts and scientific evidence at trial, as Hansen did in its failed Motion for Preliminary Injunction, to address the truth or falsity of Living Essentials' advertising statements. The harassment of Mr. Edwards is not necessary.

Moreover, the only document of which Mr. Edwards is aware that is responsive to Hansen's extremely broad document requests set forth in the subpoena is his contract with Living Essentials providing for his compensation for acting as its celebrity spokesperson. Mr. Edwards' compensation likewise has no relevance to the issues in this case. This is information that he customarily keeps confidential. Having to produce such information serves no legitimate purpose.

### C.   The Information Sought Is Available From Other Less Burdensome Sources

Hansen may obtain testimony and documents regarding the substantiation for the advertising claims at issue in this case directly from Living Essentials and its designated experts in the underlying action. For example, all of the documents sought from Mr. Edwards — putting aside their questionable relevance to the claims and defenses being asserted in the Litigation — could be sought directly from Living Essentials through document demands. For example, Document Request Nos. 1-3 relate to documents and communications exchanged between Living Essentials and Mr. Edwards. As stated above, the only responsive document of which Mr. Edwards is aware is his compensation agreement with Living Essentials. This document could be equally sought directly from Living Essentials without burdening Mr. Edwards. Document Request No. 4 seeks "All communications … related to the 5-Hour Energy shot." Again, aside from the commercial itself and his compensation agreement with Living Essentials, Mr. Edwards is unaware of any other responsive documents. These too could be sought from other sources.

The only remaining document request asks for "All documents related to any tests performed by Braylon Jamel Edwards with respect to the 5-Hour Energy shot." Aside from being vague, this demand assumes that Mr. Edwards conducted "tests" beyond merely consuming the product. There were no "tests" that were explicitly referenced or implied in Mr. Edwards' statement of his opinion regarding how the 5-Hour Energy® product makes him feel. Hansen knows well that Mr. Edwards did not perform "tests," aside from drinking the product. Again, what Mr. Edwards likes or feels cannot be open to debate.

If Hansen's concern is authenticating the commercial featuring Mr. Edwards, that too can be done by other means – without involving Mr. Edwards.

The subpoena serves no legitimate purpose, as all of the information (whether testimonial or documentary) sought – even putting aside its questionable relevancy to the claims and defenses at issue in the underlying litigation – can be sought from sources other than Mr. Edwards.

# IV. **CONCLUSION**

Non-party Braylon J. Edwards respectfully requests that this Court enter an order quashing the subpoena for his deposition testimony and production of documents on March 31, 2009. Mr. Edwards additionally requests his costs and attorney fees for having to move to quash this frivolous subpoena.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By:

Thomas W. Cunningham    (P57899)
Mark A. Cantor             (P32661)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan  48075-1238
Tel:       (248) 358-4400
Fax:      (248) 358-3351
Email:   mcantor@brookskushman.com
            tcunningham@brookskushman.com

*Attorneys for Third Party*

Dated: March 26, 2009

## CERTIFICATE OF SERVICE

I certify that I served:

**MOTION OF NON-PARTY BRAYLON J. EDWARDS TO
QUASH SUBPOENA PURSUANT TO FED.R.CIV. P. 45(c)
and BRIEF IN SUPPORT**

on   <u>March 26, 2009</u>   by:

    <u>  ✓  </u>   delivering (via e-mail)

    <u>  ✓  </u>   mailing (via First-Class mail)

a copy to:

Norman L. Smith, Esq.
Edward J. McIntyre, Esq.
Alison L. Pivonka, Esq.
**SOLOMON WARD SEIDENWURM & SMITH**
401 B Street, Suite 1200
San Diego, CA 92101

Attorneys for Plaintiff,
HANSEN BEVERAGE COMPANY

_____
Andrea J. White

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In Re:  Subpoena to Braylon J. Edwards ) | Miscellaneous Action No.: _____ |
| ) | |
| HANSEN BEVERAGE COMPANY, ) | |
| ) | |
| Plaintiff, ) | Underlying Case: |
| v.                 ) | Civil Action No.: 08 CV 1166 |
| ) | United States District Court for the |
| INNOVATION VENTURES, LLC ) | Southern District of California |
| d/b/a LIVING ESSENTIALS, ) | The Honorable Irma Gonzales |
| ) | |
| Defendant. ) | |
| ) | |

**INDEX OF EXHIBITS TO MOTION OF NON-PARTY**
**BRAYLON J. EDWARDS TO QUASH**
**SUBPOENA PURSUANT TO FED.R.CIV. P. 45(c)**

Exhibit 1 – Subpoena to Braylon Edwards

Exhibit 2 – Order Denying Plaintiff's Motion for Preliminary Injunction



AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

| | | |
|---|---|---|
| Hansen Beverage Company | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  08-CV-1166 (IEG) POR |
| Innovation Ventures, LLC dba Living Essentials, a | ) | |
| Michigan corporation | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of California |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To:  Braylon Jamel Edwards, 6728 Minnow Pond Drive, West Bloomfield, MI  48322-2662

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Patricia Murray & Associates | Date and Time: |
|---|---|
| 10524 Grand River, Suite 101 | 03/31/2009 02:00 |
| Brighton, MI  48116 (800) 875-8238 | |

The deposition will be recorded by this method:   Stenographically and Videographed

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Attachment A

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   03/02/2009

CLERK OF COURT

OR

_____         _____
Signature of Clerk or Deputy Clerk                          Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Michael M. Vasseghi,

Solomon Ward Seidenwurm & Smith, LLC _____ , who issues or requests this subpoena, are:

401 B Street, Suite 1200, San Diego, CA  92101
(619) 238-4878
mvasseghi@swsslaw.com

## ATTACHMENT 1

## DOCUMENTS TO BE PRODUCED PURSUANT TO SUBPOENA TO BRAYLON JAMEL EDWARDS

Each document[1] in the possession, custody or under the control of Braylon Jamel Edwards—without regard to the manner in which it is maintained, whether written, graphic or electronic, including specifically any email that constitutes, memorializes, refers or relates to:

1.      All documents provided to you by Innovation Ventures, LLC dba Living Essentials.

2.      All documents you provided to Innovation Ventures, LLC dba Living Essentials.

3.      All communications between you and Innovation Ventures, LLC dba Living Essentials.

4.      All communications between you and any other party that related to the 5-Hour Energy shot.

5.      All documents related to any tests performed by Braylon Jamel Edwards with respect to the 5-Hour Energyshot.

---

[1] The term "document" as used in this request is broadly inclusive and encompasses any item defined as a "writing" or "recording" in Federal Rules of Evidence, Rule 1001: "For purposes of this article the following definitions are applicable: (1) **Writings and Recordings.** "Writings" and "recordings" consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation. (2) **Photographs.** "Photographs" including still photographs, X-ray films. Video tapes, and motion pictures. (3) **Original.** Original. An "original" of a writing or recording is a writing or recording itself or any counterpart contended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original." (4) **Duplicate.** A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by chemical reproduction, or by other equivalent techniques which accurately reproduced the original."

NORMAN L. SMITH [SBN 106344]
nsmith@swsslaw.com
EDWARD J. MCINTYRE [SBN 80402]
emcintyre@swsslaw.com
MICHAEL M. VASSEGHI [SBN 210737]
mvasseghi@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
Telephone: (619) 231-0303
Facsimile: (619) 231-4755

Attorneys for Plaintiff
HANSEN BEVERAGE COMPANY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSEN BEVERAGE COMPANY, a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>INNOVATION VENTURES, LLC dba LIVING ESSENTIALS, a Michigan corporation,<br><br>　　　　　Defendant. | CASE NO. 08-CV-1166 IEG (POR)<br><br>**PLAINTIFF HANSEN BEVERAGE COMPANY'S NOTICE OF SUBPOENA FOR DEPOSITION AND PRODUCTION OF DOCUMENTS**<br><br>Hon. Irma E. Gonzalez |

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

3  Plaintiff Hansen Beverage Company, by its attorneys, will take the deposition upon oral

4  examination of Braylon Jamel Edwards at Patricia Murray & Associates, 10524 Grand River,

5  Suite 101, Brighton, MI  48116 (800) 875-8238, on March 31, 2009, commencing at 2:00

6  p.m. and continuing from day to day until completed.

7  The deposition will be recorded by stenographic, audio, video or other means.

8  NOTICE IS HEREBY GIVEN that pursuant to Federal Rules of Civil Procedure, Rule

9  45, and in accordance with the attached duly served Subpoena which is fully incorporated

10  herein by this reference, Plaintiff Hansen Beverage Company, by and through its counsel of

11  record, requests the production of records of Braylon Jamel Edwards.  Said production will

12  take place on March 31, 2009, at 2:00 p.m.

13  DATED: February 24, 2009          SOLOMON WARD SEIDENWURM & SMITH, LLP

14

15  By:  _____
         NORMAN L. SMITH

16         EDWARD J. MCINTYRE
         MICHAEL M. VASSEGHI

17         Attorneys for Plaintiff
         HANSEN BEVERAGE COMPANY

18

19

20

21

22

23

24

25

26

27

28

1  NORMAN L. SMITH [SBN 106344]
   nsmith@swsslaw.com
2  EDWARD J. MCINTYRE [SBN 80402]
   emcintyre@swsslaw.com
3  ALISON L. PIVONKA [SBN 156977]
   apivonka@swsslaw.com
4  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
5  San Diego, California 92101
   Telephone: (619) 231-0303
6  Facsimile: (619) 231-4755

7  Attorneys for HANSEN BEVERAGE COMPANY

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12  HANSEN BEVERAGE COMPANY, a          CASE NO. 08-CV-1166 IEG (POR)
    Delaware corporation,
13                                      **DECLARATION OF SERVICE**
              Plaintiff,
14                                      Hon. Louisa S. Porter
    v.
15
    INNOVATION VENTURES, LLC dba
16  LIVING ESSENTIALS, a Michigan
    corporation,
17
              Defendant.
18

19      I, KATHY R. GUMM, declare:

20      I am employed in the County of San Diego, State of California.  I am over the age of

21  18 years and not a party to this action.  My business address is Solomon Ward Seidenwurm

22  & Smith, LLP, 401 B Street, Suite 1200, San Diego, California 92101.

23      On March 2, 2009, I also served a copy, including all exhibits, if any, of the

24  following document(s):

25      **SUBPOENA TO TESTIFY AT A DEPOSITION OR TO PRODUCT DOCUMENTS IN**

26      **A CIVIL ACTION; PLAINTIFF HANSEN BEVERAGE COMPANY'S NOTICE OF**

27      **SUBPOENA FOR DEPOSITION AND PRODUCTION OF DOCUMENTS TO**

28      **BRAYLON JAMEL EDWARDS**

1  on the parties in this action listed in the attached Proof of Service List, which is incorporated

2  herein by this reference, by the following means:

3  ☒   **(BY MAIL)** I caused each such envelope to be sealed and placed for collection
   and mailing from my business address. I am readily familiar with the practice
4  of Solomon Ward Seidenwurm & Smith, LLP for collection and processing of
   correspondence for mailing, said practice being that in the ordinary course of
5  business mail is deposited with the postage thereon fully prepaid in the United
   States Postal Service the same day as it is placed for collection. I am aware
6  that upon motion of the party served, service is presumed invalid if the postal
   cancellation date or postage meter date on the envelope is more than one day
7  after the date of deposit for mailing contained in this affidavit.

8  ☐   **(BY PERSONAL SERVICE)** I caused each such envelope to be sealed and
   given to a courier authorized by our attorney service to receive documents for
9  delivery on the same date. A proof of service signed by the authorized courier
   will be filed forthwith.

10
   ☐   **(BY FEDERAL EXPRESS)** I am readily familiar with the practice of Solomon
11  Ward Seidenwurm & Smith, LLP for the collection and processing of
   correspondence for overnight delivery and know that the document(s)
12  described herein will be deposited in a box or other facility regularly
   maintained by Federal Express for overnight delivery.

13
   ☐   **(BY FACSIMILE)** This document was transmitted by facsimile transmission
14  from (619) 231-4755 and the transmission was reported as complete and
   without error. I then caused the transmitting facsimile machine to properly
15  issue a transmission report, a copy of which is attached to this affidavit.

16  ☒   **(BY EMAIL)** This document was transmitted by email from
   kgumm@swsslaw.com. The transmission was reported as complete and
17  without error.

18  I declare that I am employed in the office of a member of this bar of this court, at

19  whose direction this service was made.

20  Executed on March 2, 2009, at San Diego, California.

21                                              KATHY R. GUMM

22

23

24

25

26

27

28

## PROOF OF SERVICE LIST

| | |
|---|---|
| Mark B. Mizrahi, Esq.<br>Brooks Kushman, P.C.<br>Howard Hughes Center<br>6100 Center Drive, Suite 630<br>Los Angeles, CA 90045<br>Telephone:  (310) 348-8200<br>Facsimile:    (310) 846-4799<br>mmizrahi@brookskushman.com<br>Attorneys for Innovation Ventures LLC dba<br>Living Essentials | Mark A. Cantor, Esq.<br>Mark Lorelli, Esq.<br>Thomas W. Cunningham, Esq.<br>Brooks Kushman P.C.<br>1000 Town Center, 22d Floor<br>Southfield, MI 48075<br>Telephone:  (248) 358-4400<br>Facsimile:    (248) 358-3351<br>mcantor@brookskushman.com<br>mlorelli@brookskushman.com<br>tcunningham@brookskushman.com<br>Attorneys for Innovation Ventures LLC dba<br>Living Essentials |
| Daniel T. Pascucci, Esq. (SBN 166780)<br>Nathan R. Hamler, Esq. (SBN 227765)<br>Mintz Levin Cohn Ferris Glovsky and<br>Popeo PC<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA 92130<br>Telephone:  (858) 314-1510<br>Facsimile:    (858) 314-1501<br>dpascucci@mintz.com<br>nhamler@mintz.com<br>Attorneys for Innovation Ventures LLC dba<br>Living Essentials | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  HANSEN BEVERAGE COMPANY, | CASE NO. 08-CV-1166 IEG (POR) |
| 12                  Plaintiff, | **ORDER DENYING PLAINTIFF'S** |
| 13     vs. | **MOTION FOR PRELIMINARY INJUNCTION** |
| 14  INNOVATION VENTURES, LLC dba LIVING ESSENTIALS, a Michigan | **(Doc. No. 7.)** |
| 15  corporation, | |
| 16                  Defendant. | |

17

18        Presently before the Court is plaintiff Hansen Beverage Company's motion for preliminary

19  injunction enjoining the sale and advertisement of defendant's products.  (Doc. No. 7.)  For the

20  following reasons, the Court DENIES the motion.

BACKGROUND

21

22  Factual Background

23        Plaintiff Hansen Beverage Company brings this action for false advertising against

24  defendant Innovation Ventures doing business as Living Essentials.  Plaintiff produces the

25  "Monster" energy drink and other energy beverages.  Defendant produces the "5-Hour Energy" 2-

26  ounce "energy shot."  Defendant has sold the product for four years for total profits of over $150

27  million.  Although plaintiff's "Monster" products come in a 16-ounce (or larger) can, plaintiff

28  intends to release a small-size product to compete in the "energy shot" market.  Plaintiff seeks a

1    preliminary injunction enjoining defendant from calling its product "5-Hour Energy" and making

2    the claims that it give "hours of energy now" with "no crash later."

3    <u>Procedural Background</u>

4            Plaintiff filed suit on July 1, 2008. (Doc. No. 1.)  Plaintiff alleges three causes of action: (1)

5    false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising in

6    violation of California Business and Professions Code Sections 17200 and 17500; and (3) trade

7    libel in violation of California law. (<u>Id.</u>)  On August 8, 2008, plaintiff filed the instant motion for

8    preliminary injunction. (Doc. No. 7.)  On August 21, 2008, defendant filed ex parte motions for

9    discovery and a continuance of the hearing date. (Doc. Nos. 11 & 12.)  The Court denied the

10   motion to continue the hearing date on August 25, 2008. (Doc. No. 15.)  Magistrate Judge Porter

11   denied the ex parte motion for discovery on August 28, 2008. (Doc. No. 20.)

12           On August 29, 2008, defendant filed an opposition to the motion for preliminary

13   injunction, and on September 8, 2008, plaintiff filed a reply. (Doc. Nos. 25 & 30.)  The Court

14   heard oral argument on the motion on September 15, 2008 at 10:30 a.m.  Edward McIntyre of

15   Solomon Ward appeared on behalf of plaintiff.  Mark Cantor of Brooks Cushman appeared on

16   behalf of defendant.

17                                    DISCUSSION

18   <u>Legal Standard</u>

19           A preliminary injunction is appropriate if the moving party establishes either (1) a

20   combination of probable success on the merits and the possibility of irreparable injury; or (2)

21   serious questions going to the merits of the case and the balance of hardships tips sharply in favor

22   of the moving party. <u>Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.</u>, 240 F.3d 832, 839-840

23   (9th Cir. 2001).  These are not two separate tests, but rather two points on a sliding scale in which

24   the required showing of harm varies inversely with the required showing of meritoriousness.

25   <u>Clear Channel Outdoor Inc. v. City of Los Angeles</u>, 340 F.3d 810, 813 (9th Cir. 2003).  Courts

26   have also traditionally considered the advancement of the public interest when granting a

27   preliminary injunction. <u>Johnson v. Cal. State Bd. of Accountancy</u>, 72 F.3d 1427, 1430 (9th Cir.

28   1995).  In any situation, the court must find there is some threat of an immediate irreparable

1   injury, even if that injury is not of great magnitude.  Oakland Tribune, Inc. v. Chronicle Publ'g

2   Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).

3          The factual determinations made by the court when granting or denying preliminary

4   injunctive relief, and the legal conclusions drawn from them, are not final adjudications on the

5   merits; rather, the court "need only find probabilities that the necessary facts can be proved."

6   Sierra On-Line, Inc. v. Phoenix Software, 739 F.2d 1415, 1423 (9th Cir. 1984).  Finally, pursuant

7   to Rule 65, no preliminary injunction may issue without a security posted by the applicant in an

8   amount determined by the Court as sufficient to protect the interests of the enjoined party.  See

9   Fed. R. Civ. P. 65(c).

10  Analysis

11  I.      Likelihood of Success on the Merits

12          A.      Plaintiff's Arguments

13          Plaintiff argues it is likely to succeed on its claim for false advertising under the Lanham

14  Act.  Section 43(a) of the Lanham Act provides:

15              Any person who, on or in connection with any goods or services . . . uses in
                commerce . . . any . . . false or misleading description of fact, or false or misleading
16              representation of fact, which . . . . in commercial advertising or promotion,
                misrepresents the nature, characteristics, qualities, or geographic origin of his or her
17              or another person's goods, services, or commercial activities, shall be liable in a
                civil action by any person who believes that he or she is or is likely to be damaged
18              by such act.

19  15 U.S.C. § 1125(a)(1).

20          "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that

21  the statement was literally false, either on its face or by necessary implication, or that the statement

22  was literally true but likely to mislead or confuse consumers."  Southland Sod Farms v. Stover

23  Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  Plaintiff argues the claims made by defendant are

24  literally false on their face and by necessary implication.

25          Plaintiff argues the name "5-Hour Energy" and the claims made on the bottle and in

26  advertisements ("Hours of Energy Now" and "No Crash Later") are literally false.  Plaintiff bases

27  this argument on a declaration by an in-house expert, Dr. Thomas Davis.  Dr. Davis declares "this

28  product does not, and cannot, produce energy, a defined scientific term, for the period of time that

1   Living Essentials claims, in any measurable amount." (Davis Decl. ¶ 4.)  Dr. Davis defines energy

2   as the ability to do work, a scientific meaning, not the "energized feeling" which a user may obtain

3   from substances such as caffeine.  (Id. ¶¶ 7, 24.)[1]

4        Plaintiff also argues any "energized feeling" stemming from use of the product does not

5   last five hours.  Plaintiff bases this argument on a statistical graph from defendant's website,

6   which shows that 57.7 percent of users taking 5-Hour Energy found it provided five or more hours

7   of energy.  Plaintiff argues this demonstrates the product does not generally last five hours, but

8   only does so 57.7 percent of the time.

9        Finally, plaintiff also argues the "no crash later" claims made on the bottle and in

10  advertisements are not true because according to defendant's own study, 24% of users experienced

11  some sort of "crash," and one-quarter is not "none."

12       **B.**     Defendant's Arguments

13       In response, defendant argues its advertising claims are not "literally false."  Defendant has

14  submitted a declaration by Dr. Gail Mahady.[2]  Dr. Mahady offers the opinion that a product can

15  boost a user's "energy" in ways other than giving the user calories.  According to Dr. Mahady, the

16  ingredients found in "5-Hour Energy," including caffeine, taurine, and vitamins, have been

17  scientifically shown to increase vigor and vitality.  The product therefore delivers a perception of

18

19

20

21       [1]Plaintiff supports its argument that "energy" as used on the bottles means physical energy by

22  discussing the picture on the bottle (a person running on the top of a mountain) and the pictures
    contained in defendant's television and print advertisements of people completing physical activities.

23  Plaintiff argues this shows "by necessary implication" that defendant means the product gives you the
    biomechanical energy to complete athletic endeavors.

24

25       [2]Plaintiff filed objections to the Mahady declaration, arguing she does not have personal
    knowledge.  Plaintiff's objections are primarily focused on disputing the facts asserted by Dr. Mahady.

26  The Court finds the relevant portions of the declaration are based on Dr. Mahady's review of the Blum
    study or other studies and thus based on her personal knowledge.  The Court does not rely on Dr.

27  Mahady's declaration for any other disputed facts.
         The Court also overrules defendant's objections to plaintiff's evidence based on lack of

28  personal knowledge and relevance.  The Court notes both parties improperly used evidentiary
    objections based on relevance and lack of personal knowledge as a mechanism for disagreeing with
    factual assertions.

1   "energy" without actually delivering caloric energy to the body.[3]  Other products on the market,

2   such as plaintiff's own Diet Red Energy product, are called "energy drinks" despite having no

3   sugar or almost no sugar.

4        Dr. Mahady also reviewed a clinical study regarding the "5-Hour Energy" product and

5   found that the product did actually give an average energy boost of about five hours.  The

6   statistical average energy boost experienced in the Blum study was 4.92 hours.  The bottle also

7   warns that "individual results may vary" as to the hours of energy actually experienced by an

8   individual.

9        Dr. Mahady also opines that most users do not experience a "crash" from using "5-hour

10  energy."  Dr. Mahady defines crash as an energy dip <u>below</u> the energy experienced by the user

11  prior to drinking an energy drink.  (Mahady Decl. at ¶ 10.)  According to Dr. Mahady, the "crash"

12  reported on the chart on defendant's website is a return to the previous energy baseline, not a dip

13  below.  (<u>Id.</u>)  Accordingly, it is Dr. Mahady's opinion that all of the contested claims are supported

14  by scientific research and they are not false.

15       C.     <u>Analysis</u>

16       The parties offer expert declarations providing contrary definitions of "energy."  Plaintiff's

17  view is that the word "energy" can only mean caloric energy.[4]  Defendant's view is that "energy"

18  may be understood more colloquially to convey an "energized feeling," such as that obtained from

19  caffeine.  The falsity of the "no crash later" and five hour durational claims are similarly disputed.

20  "In deciding a motion for a preliminary injunction, the district court is not bound to decide

21  doubtful and difficult questions of law or disputed questions of fact."  <u>Int'l Molders' and Allied</u>

22  <u>Workers' Local Union No. 164 v. Nelson</u>, 799 F.2d 547, 551 (9th Cir. 1986) (internal citations

23  omitted).  Accordingly, the Court declines to resolve these factual disputes on such a limited

24

25       [3]As Dr. Mahady noted, illegal drugs such as methamphetamine or cocaine also give users the
     perception of increased energy by suppressing the brain's receipt of fatigue signals, among other
26  effects.

27       [4]Plaintiff argues the pictures used in defendant's advertisements imply the product provides
     caloric energy for completing physical endeavors.  This argument is not persuasive.  If a substance
     negates the user's perception of fatigue and gives the perception of increased energy, this could enable
28  increased physical activity without providing increased biomechanical energy.  This factual issue is
     not appropriate for resolution on such a limited record.

1    record, and finds plaintiff has not demonstrated a likelihood of success on the merits.

2    III.    Irreparable Harm

3        A.    Presumption of Irreparable Harm

4        Plaintiff argues the Court should presume irreparable harm in this case because plaintiff

5    has shown defendant's advertising claims are literally false.  First, the Court declines to apply such

6    a presumption because plaintiff has not shown literal falsity.  Second, the out-of-Circuit decisions

7    applying such a presumption are not binding on this Court.  See Time Warner Cable, Inc. v.

8    DIRECTV, Inc., 497 F.3d 144 (2d Cir. 2007)[5]; Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 944 (3d

9    Cir. 1993).  The Court declines to deviate from traditional principles of equity without binding, in-

10   Circuit authority.  See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006) (holding courts

11   should not apply blanket presumptions when evaluating the propriety of equitable relief); Reno Air

12   Racing Assoc., Inc. v. McCord, 452 F.3d 1126, 1137-38 (9th Cir. 2006) (explaining "[t]he Supreme

13   Court recently reiterated that district courts should apply 'traditional equitable principles' in

14   deciding whether to grant permanent injunctive relief and the decision is 'an act of equitable

15   discretion by the district court. . . .'") (citing eBay, 126 S. Ct. at 1839).

16       The unpublished decision of the Central District of California in Pom Wonderful LLC v.

17   Purely Juice, Inc., 07-2633 CAS, 2008 U.S. Dist. LEXIS 55426 (C.D. Cal. July 17, 2008), does

18   not support plaintiff's arguments.  In Pom Wonderful, the court found irreparable harm based on

19   the facts determined in a seven-day bench trial.[6]  The court explained it found irreparable harm

20   based on "substantial evidence that plaintiff has and will continue to suffer irreparable harm in the

21   form of loss of consumer goodwill, lost current and prospective business relationships, and

22   tarnished reputation as a result of [defendant]'s actions."  Id. at *41.  Plaintiff incorrectly states the

23

24       [5]In Time Warner, the Second Circuit held:
         the likelihood of irreparable harm may be presumed where the plaintiff demonstrates
25       a likelihood of success in showing that the defendant's comparative advertisement is
         literally false and that given the nature of the market, it would be obvious to the
26       viewing audience that the advertisement is targeted at the plaintiff, even though the
         plaintiff is not identified by name.
27   Id. at 148.

28       [6]Contrary to plaintiff's representation, the decision did not concern a preliminary injunction.
     Compare Reply at 7 with Pom Wonderful, 2008 U.S. Dist. LEXIS 55426 at *41.

1   decision "state[s] unequivocally that irreparable harm is presumed when a competitor's

2   advertisement is literally false." (Reply at 7.) The Central District did not apply such a

3   presumption in Pom Wonderful.[7] The Court finds such a presumption inappropriate in this case.

4       B.      Traditional Principles of Equity

5       Traditional equitable principles disfavor an injunction in the circumstances of this case.

6   First, courts are especially hesitant to alter the status quo before a full trial on the merits. As the

7   Ninth Circuit explained in Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804 (9th Cir. 1963):

8           It is so well settled as to not require citation of authority that the usual function of a
            preliminary injunction is to preserve the status quo ante litem pending a
9           determination of the action on the merits. The hearing is not to be transformed into
            a trial of the merits of the action upon affidavits, and it is not usually proper to grant
10          the moving party the full relief to which he might be entitled if successful at the
            conclusion of a trial. This is particularly true where the relief afforded, rather than
11          preserving the status quo, completely changes it.

12   Id. at 808-09; see also LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158

13   (9th Cir. 2006) ("[The requested relief] will not further the purpose of a preliminary injunction,

14   which is merely to preserve the relative positions of the parties until a trial on the merits can be

15   held."). Plaintiff's requested injunction would prevent sales of defendant's product under it

16   current name and prevent defendant from claiming the product is an energy drink. If the

17   injunction issued, defendant's business would essentially end. The balance of equities disfavors

18   the entering of the injunction without further factual development.

19       Second, plaintiff's delay in bringing suit weighs against granting a preliminary injunction.

20   The "5-Hour Energy" product has been sold for four years. Plaintiff's president, Rodney Sacks,

21   represents he learned of the offending claims one month before filing suit. But the company's

22   awareness of the energy shot market, of which 5-Hour Energy is a market leader, must have

23   predated the lawsuit by at least several months. Mr. Sacks represented to investors in an August 8,

24   2008 conference call that the company was planning the launch of an energy shot product.

25

26       [7]The court did, after finding literal falsity, presume customers were deceived or misled. Pom
    Wonderful, 2008 U.S. Dist. LEXIS 55426 at **28-29. The Ninth Circuit upheld this presumption in
27   Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 209 (9th Cir. 1989) (holding the jury may
    "presum[e] that the consumers are, in fact, being deceived" where a competitor intentionally deceives
28   consumers by expending "substantial funds in an effort to deceive consumers and influence their
    purchasing decisions.").

1    (Hamler Declaration ISO Motion to Continue Hearing, Ex B. at 4.)  The company already had a

2    name for the product and had "comp[l]eted the formulation and the design of the product and

3    anticipate[d] launching [it] later this quarter." (Id.)  Mr. Sacks also represented the company

4    monitored the "energy shot" market, waiting for it to "mature . . . to a sufficiently high level to

5    justify the costs and focus of launching products and manpower behind it." (Id. at 11.)  In light of

6    these representations and the popularity of 5-Hour Energy for a period of four years, the Court

7    does not accept Mr. Sacks' representation that plaintiff learned of defendant's product shortly

8    before filing this lawsuit.[8]  Delays in requesting an injunction, whether for months or years, tend to

9    negate a claim of irreparable harm.  See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762

10   F.2d 1374 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a

11   lack of urgency and irreparable harm."); Givemepower Corp. v. Pace Compumetrics, Inc., No.

12   07cv157 WQH, 2007 WL 951350 (S.D. Cal. Mar. 23, 2007) (holding delay of two months, in

13   circumstances of case, negated showing of irreparable harm).

14           The Court therefore finds plaintiff has not shown it will be irreparably harmed if the Court

15   does not enter the requested injunction, and finds that the balance of equities disfavors a change in

16   the status quo before a full trial on the merits.

17                                    CONCLUSION

18           For the foregoing reasons, the Court DENIES plaintiff's motion for a preliminary

19   injunction.

20

21   **IT IS SO ORDERED.**

22

23   **DATED:  September 29, 2008**

24                                            _Irma E. Gonzalez_
                                             **IRMA E. GONZALEZ, Chief Judge**
25                                           **United States District Court**

26

27   _____

28       [8]If the representation were true, it would tend to negate a showing of irreparable harm because
     it indicates plaintiff did not believe the energy shot market had serious impact on its market until just
     recently.

                                        - 8 -                                  08cv1166